Good morning, Your Honors. Jeffrey Lawrence, attorney for plaintiffs. May it please the Court. Your Honors, we're here today because the defendants released a defective product into the market that clearly had false and misleading advertising on the packaging. In the initial complaint, plaintiffs alleged specifically that the packaging indicated it was a multiplayer game and that it offered cooperative gameplay for 2-16 players. However, at the time of its release, that was not possible. In a proposed First Amendment complaint, which was also considered by the District Court, the plaintiffs further alleged specifically that the packaging stated that it was, quote, featuring a Grand Theft Auto online game prominently displayed in the middle of the packaging with larger text than any other portion of the packaging. Can we focus a little bit on the disclaimer? Because that seems to be the focus of this case. And you make the argument, and I think it's probably a good one, that the disclaimer wasn't accurate because it suggested that at least at some point for some people, some features would be available where realistically, at least for some limited period of time, no feature was available to anybody. So let me assume for the moment that that's a misleading statement. I'm having more trouble, and I read the First Amendment complaint too, figuring out how your clients can allege reliance on it. You get a disclaimer that says, in effect, this product may not work for some folks. And your clients say, well, I rely, that false statement, because the true statement would have been it won't work for anybody, that false statement, in reliance on that false statement, I bought it. Tell me how you can allege reliance here. Well, Your Honor. The judge never got to that because he thought there wasn't a false statement. And maybe we just ought to let him sort that out. But I think it's him in this case. But tell me, how can you rely on a statement that says this product may not work? Well, with all due respect, we don't, I don't believe that's what the disclaimer says. Well, we know exactly what it says. We can read it. It says all features may not be available for all users. Right. And my argument in the briefs was that it turns on the word, the second word, all, and may not be available to all users necessarily implies that it is available to some users. Right. But how would your clients in buying it, what reason did they have to think that they would be among the favored class? I'm sorry, that they would be among the favored class of people who could use it? When buying it, didn't they know that they might well be among the some users who couldn't use it? Well, my argument is this. That disclaimer is intended once the online gameplay has become available. The reason I say that is because the disclaimer ends with the following, that you must give 30 days notice to terminate online availability. So the disclaimer doesn't even kick in until the online gameplay is available. And what it's designed for is not to disclaim periods of non-operation, of planned non-operation by the software company, but to cover periods where the networks are having issues, such as the PlayStation Network and the Xbox Live Network, which are not operated by the software company. But here we have the software company not providing the software to make the online gameplay available, yet the packaging... For two weeks. For the first two weeks. Yeah, right. Which was crucial to their sales. And they did, I think, three billion in the first three days. It's the fastest selling game ever. And that's because of the timing of the release of the new game systems, which it would not be playable on. How were your clients... I mean, I understand your clients were injured because they couldn't play for two weeks, but how were they monetarily injured? Well, the argument is this, that had they known that they wouldn't be able to play that for two weeks, and as it came out, you weren't really able to play it for an additional two weeks because it wasn't working properly. By that time, there would be no reason to invest money in the game. Why? Why not just wait two weeks to buy it? Because the game wouldn't have much play value due to the fact that these plaintiffs were intensive gamers who were planning on buying the new next generation systems, which were due two months from after this was released. So the closer you get to that release date of the new systems, the less likely people are to buy it because it's not going to have that replayability, because all your companions are going to be having the new system. And I understand the district judge didn't go off on damages. I'm just... Are you saying your damages are contingent upon the fact of a third party issuing new gaming systems? I'm saying that the damages are contingent on the fact that they weren't able to access all features of the game at the time they bought it. And that had that been made clear to them, they may very likely have not chosen to purchase it in the first place. And so you're seeking a refund? A refund or some type of compensation. I know that the defendants essentially tried to appease gamers by giving them online money in the game because there was a problem. They acknowledged that, I think. And that doesn't cure this case. And did your client seek a refund? As I alleged, I think in the plaintiffs alleged in the first amended complaint, they couldn't seek a refund because when you try to get a refund for a game... No, I'm not talking about the... You didn't sue the retailer. You sued the manufacturer here. Did you seek a refund? They did not contact the manufacturer and seek a refund. The normal means would be to return it to the store. And the stores will not return games. They will only exchange them for the same game, which... Oh, I understand all that. But they never sought any of that. And they didn't sue the retailer. With the knowledge of what would happen, they felt it was futile to attempt to return it when the policies... And so what are the precise damages you're seeking in this lawsuit? Would be some type of, I guess, the way they would normally handle it would be give a discount on a future game or give a refund for people who can show that they bought it during the first two weeks of gameplay. If they demand it and they return their game. But if they don't return their game, then I think future discount towards future purchase from Rockstar would be appropriate. But this is a proposed class action? Yes. And the class would consist of? Purchasers of Grand Theft Auto 5 video game within the first two weeks of its release, I think September 17, 2013 to October 1st. The online gameplay wasn't available until October 1st. I take it the district judge never got to the class issues because he dismissed your complaint? Correct. Without leave to amend, right? Correct. But you had submitted a proposed amended complaint, correct? Correct. So the judge said that that one didn't cure the problem that he identified, which was that there was no misrepresentation. Correct. Gee, I'm sorry. I would go back and forth on Phillips. There's another one, isn't there? The main thing I think we added in the first amended was the prominence of featuring GTA online in the middle of the packaging. Right. Because her ruling initially was that we didn't have specified a false or misleading statement. But she addressed that and she didn't think that was false or misleading. I humbly disagree. I think that is the most prominent advertising on the package that the disclaimer down in far smaller languages is misleading at best. The whole point is that you wanted it to be online so you could play with other people. Right? Isn't that the whole point of this particular game? Well, there actually is a single player game you can play by yourself at home and that's all you could do for the first two weeks. My argument is that the defendants came with the expectation that they would play it online because that's all they do. Similar to the Call of Duty games. They do have a single player feature, but most people purchase it to play online against their friends. That's the argument here. Does anybody have any other questions? Your amended complaint, you don't seek to amend it beyond what you proffered would be your first amended complaint? Well, we could probably, the first amended was submitted before the district court gave a ruling so there certainly could be some more fine tuning. The other thing I wanted to address that goes along with that is my request for judicial notice. For example, I gave packaging of other Grand Theft Auto video games to demonstrate that the packaging on Grand Theft Auto V is very different and that it features this online gameplay when none of the other packaging features it. How does that go to a motion to dismiss? I mean, either your complaint stated a claim or it didn't. It doesn't really matter what the evidence of what other people did was. That's a summary judgment issue. The judge may have a different opinion in granting the motion to dismiss, but I don't see why we should consider other evidence in figuring out whether a complaint is facially sufficient. I guess I thought it would help assist the prior fact. She wasn't a prior fact, nor are we. This is a legal question, isn't it? Well, you could attach them to your complaint, actually, if you wanted to incorporate them into your complaint. Right. I want to go back to Judge Rice's question, if I may, for a second. The judge didn't formally offer you an opportunity to amend, but you had proposed an amended complaint, and I think she said that wouldn't solve the problem. She said it's futile. You're not contending that she erred in denying you the right to file one, more that she erred in concluding that the one that you proposed wasn't sufficient, right? Correct. Okay. Oh, I see I have a little bit of time. If there's no more questions, I'd like to reserve it for rebuttal. Okay. Why don't you do that? Good morning, Your Honors. My name is Michael Lynch, and I'm an attorney at Kelley Dry & Warren, and we represent the defendant appellees. I'm accompanied here today by my partner, Lee Brenner, as well. I'd like to start just very quickly on the standard of review for a moment, because I think it's an important concept in this case. The dismissal of the original filed complaint, which we refer to in our brief as the operative complaint, is obviously reviewed under a de novo standard. The decision to not allow the amendment on the original filed complaint is a different standard, and we think it's important in this case. Is it a different standard in this case? After all, what the judge said, to give her credit, is, I don't think you've alleged anything misleading. And your amended complaint doesn't allege anything misleading. And so it's a legal conclusion, isn't it? So, no. And I think that one of the reasons is... Actually, I would think it's a factual conclusion, which you shouldn't be making, whether it's misleading or not. But with respect to the... Yeah, she may have been wrong in her conclusion, but she didn't, she wasn't saying, well, I exercise my discretion not to let you file an amended complaint. She said, it says the same thing as the first one with respect to this issue, and I don't think that's enough. Well, in fact, if you look at the complaints, I don't think that's accurate. I don't think that's true. The original complaint contained no detail, contained no statement that they alleged was false. There's no specific allegation as to what or when or how it was false. Well, let me put it this way. Here's why I'm having difficulty with your problem, with your argument. If you're telling me she exercised her discretion not to let them file a first amended complaint with more detail, I would find that an abuse of discretion. After all, we've said many times that when you dismiss a complaint for absence of detail, you should give the other side the opportunity to suggest an amended one. So even if I buy your premise, which I'm having difficulty with, I don't think you get anywhere with it, respectfully. And I'll move on, but I'll just point out that the judge did, in fact, give them a chance. She considered the amended complaint, the first amended complaint, and for, I think, somewhat different reasons, denied that motion as being futile. Well, there's a statement on your package, your client's package. Yes. And I paraphrased it before, so I won't paraphrase it again because I'll get it wrong. But that statement to me suggests that some people who buy this may not have access to some of the features. The truth was that all people who bought it would not have access to one of the features, correct? Your second statement is true. I would take issue with your first one. Well, the first one, it says what it says. Neither of you will accept my characterization of it, so I could read it to you, but I won't do that. Why isn't that second statement that you agree with false? I'm sorry. To the extent it says that, well, just use the second statement. Isn't it true that this feature was available to no purchaser? Correct. Okay. If we find that the disclaimer represents that it will be available to some, isn't that a misstatement? No. The statement, and I'll read it. We can read it, and we all have it in front of us. It says access to special features may require Internet connection, which this one would. It also says it may not be available to all users. May not be available to all users. The truth is it was not available to any user, correct? I don't think it says that. Don't ask me. Here's what it says. You read it. It says it may not be available to all users, correct? Correct. Isn't the corollary of that is that it will be available to some users? We submit that that would not be a reasonable inference to make. And the Court, in fact, below Judge Phillips, did find that there was not reasonable reliance in this case, and that's an issue that does not. Well, but her reasonable reliance finding was based on the fact that she thought there was no misstatement, and therefore there couldn't have been reasonable reliance. She didn't parse it as to the second issue, did she? As to whether this is a... As to if it's a false statement she didn't say, and even if it were false, you didn't rely on it. Well, I think implicit in her ruling is it also, and actually explicit in her ruling, is not only that is it not false, but it's not misleading. That's correct. And if I think that's wrong, for purposes of discussion, she didn't then separately analyze whether or not if it was misleading, there was reasonable reliance on it. But she did not address... She just simply said because it's not false or misleading, you couldn't have... You didn't have... You didn't rely on it to your detriment. Correct? That's right. Okay. That's right. So let's get back. Why do you think this statement is not misleading? Why do I think the statement is not misleading? Yeah. To me, when I read it, just... And let me tell you, I know nothing about online gaming. But when I read it, it suggests to me that at least some users will have access to the features. You may not be among the chosen few, but that some users will have them. And the truth is that no users had access to those features, at least for some period of time. And so let's be clear. This is... And Your Honor asked a question earlier about the distinction between the single-player game and the online version. This online aspect, at the time the game was released, was only a small portion of what this game was about. The game itself and the prior iterations of this game were the games that are played on the console in a single-player mode on your video game, on your own personal video game console and on your TV. The online version was something that hadn't been released in this game series before. There have been minor aspects of the Grand Theft Auto IV game that had it. But it is... So it was a new feature, and it is for, as plaintiffs have attempted to put in some evidence on this front, they are experienced gamers. They understand what these packages mean. They understand, you know, what is out in the marketplace. I would also, just on the point of whether this statement is misleading, it requires an inference that we just are positioned that it's not a reasonable inference to assume that it means some people would have had access. So you think when you buy this package, you should be on notice that no one may have access to the online feature? But there are times that you may not have access. No one. No one will. Yes. I don't think it says anything contrary to that. I don't think there's an inference that could be made to that. Now, let me then address a separate issue then, Your Honor. To the extent that this is in our supplemental record, to the extent that this assists you in your decision-making, the court below, we had made a motion to submit evidence outside the four corners of the complaint. The two first exhibits are the two that she accepted, and those are the actual game packages for obvious reasons. Because they were described in the complaint. Exactly. The rest of the exhibits that we attach, which are part of our supplemental record, she did not rule were inadmissible. She ruled she didn't need to look at them because she felt the packaging was clear enough. To the extent that you have a question on the packaging, we have evidence in the record that establishes that the game company, the defendants, were quite clear with the public for a long period of time that the online version, the online aspect, which is a single aspect of this game, which is a complex game, it's a single aspect, a free element of the game, in fact, was not going to be available for the two weeks. But isn't that a summary judgment issue? Yes. We can't look at that. It's not. We cannot look at that, especially now for the first time on appeal when the district court didn't even consider it in issuing her ruling. We have to look at what she ruled and what she – the rationale for how she ruled limited to the four corners of the complaint and what was attached to that. And so – and my – first, I don't believe it's a summary judgment issue because these are not hearsay statements. These are statements that are being admitted. But we're dealing with the facial sufficiency of the complaint. These are matters of defense. So if somebody says, I lied to Judge Wardlaw yesterday when I said something in open court, and somebody says, Wait a minute, I have the transcript. It wasn't a lie. That doesn't have to deal with the complaint. It deals with your defense. You never filed an answer. So it's not offered for the truth of the statements. I'm not arguing about whether they're hearsay. And perhaps to your point, Your Honor, what it would require then would be if you found that this was a misleading statement, inactionable, which I think are two different things as well here, it could be that you would instruct Judge Phillips to consider. No, no. All we're looking at is whether or not she should have allowed the filing of the First Amendment complaint and whether or not she was given the allegations in the complaint, whether they were sufficient to make out a claim that the representation was misleading, not a determination whether it was actually misleading, but whether the complaint states a claim that it was misleading. The complaint may be frivolous. We don't know. But that's not factually frivolous. The question is whether it's legally sufficient on its face. So she says she didn't need to look at those exhibits. I can deal with that. That's sort of the problem I'm having with this ruling that she did. She actually looked at the thing and concluded that or made a finding that it wasn't misleading. And I don't think that's what she should do necessarily on a 12B6 motion to dismiss. You're supposed to look at the allegations in the complaint and viewing them in the light most favorable to the nonmoving party, determine whether or not they've stated a claim. It could be not a very good claim or a claim not worth very much money. And so I think what Judge Phillips did below, Your Honor, is that she was asked to look, and the amended complaint urged her to consider whether the packaging said this option in the game would be immediately available. The term immediately is peppered throughout the first amended, the proposed amended complaint. And her ruling was simply that that's not what it says. It doesn't say it would be immediately available, and it would be unreasonable for you to rely upon that based on what the packaging actually says. And so, you know. And we review that ruling de novo, do we not? Correct. And that is a finding of – I think that's as a matter of law that she found that. Right, because it can't be a finding of fact. It's a motion to dismiss. Could you address the – let's assume that this statement is misleading. Could you address the reliance issue? I know the judge didn't because she said it wasn't misleading, therefore you couldn't have relied. Can you respond to their reliance theory? I'm having some difficulty in this case figuring out, even if it's taken at face value, why anybody should assume that online gaming would be available to them as opposed to somebody else during the first two weeks. And I think that's a very valid question. And the issue then, you know, when – for someone who's experienced with these games and to understand what these labels mean, what the packaging says, I think the key question is, is it reasonable to rely upon something that you understand relies upon an internet connection, relies upon a lot of other aspects. It's not always available, and that's a fact. So for them – for the plaintiffs to come in and take the position that this was clear on its face, that this was immediately available to them, is an unreasonable conclusion for them to rely upon. Is there a – and beyond that, I think the issue you pointed out as to why they would be in the so-called, as you described it, the favored class is another very good question. Why is it that to the extent that some people would have access to it, why were they reasonable to believe that it would be them? And we submit that the answer is that it's simply not reasonable and that they haven't, in fact, actually relied. And that's a conclusion that we don't think they really even appealed before Your Honor. Now, if I could move on for a moment to some of the economic injury points that Your Honor raised, I'd like to do that. Below, the court relied upon the quick set decision to determine whether there was an economic injury, and that's the proper standard, but I think that there's – we submit that there are facts in that case that make it very different from the facts in this case. The quick set case, the plaintiff had purchased a lock that said it was made in the USA, and that turned out to be demonstrably false. That wasn't a misleading statement. It was a demonstrably false statement that, in fact, the lock wasn't made in the United States. The plaintiffs came before the court – I see that I'm running out of time, so I'll try to pick it up. They came before the court and asked for a refund because they didn't want a lock that wasn't made in the United States. That's an economic injury. That's a logical economic injury. We have a far different scenario here. We don't have plaintiffs who are saying they don't want this game. They've never said that. In fact, what they're saying is they wanted it, but they just wanted to have full access to everything for those two weeks. That's an expectation damage. That is not economic damages, and that is not sufficient for their claims under the UCL or the FAL. Aren't they saying they wouldn't have bought it if they knew that they wouldn't have online access for two weeks? I heard him say something today about there was an additional two weeks where it ended up not being available. We contest that the second two weeks weren't available. Our position, and we think it was conceded below, actually, and we think it's a fact that it was available after two weeks. This is an argument that I'm not familiar with, and it's not one that the plaintiffs raised below. But, counsel, in their complaint, they asked for a refund, and so we have to take that on face value. And if they ask for a refund, now I agree, maybe we get down to summary judgment and you can prove that not only did they keep the game, but they've used it for the last three years for 25,000 hours and they didn't want a refund, they've used it fully. And you may develop that in depositions and bring that on summary judgment and show that they didn't justifiably rely and they did not actually seek a refund. But we're on a motion to dismiss. And so what they're asking, if you listen, is some kind of the words counsel just used a moment ago, seeking a refund or some kind of compensation, and that was described as a discount on a future game. This is a speculative theory of damages, and it's not clear to me. They've never come in and said we don't want the game. We'd never want the game because of those two weeks. Well, they said the word refund, and that's the magic word. I agree with you that they're not going to get expectation damages or incremental reduction in a future game. But if they said I want a refund, I've never used the game that sat on my shelf for the last three years. You can have it back. They've stated a cause of action under their complaint. Not a cause of action. They've arguably raised an economic injury, but I still don't think they've stated a cause of action just by that statement alone. However, I would submit that what they have said is a little bit different from I want a refund. What they've said is I wasn't happy with this game, and I didn't have use of this game, and that's the in-ray Sony gaming case, and that's exactly what that case speaks to. That case says to maintain an established standing under the UCL and FAL, the plaintiff must establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, quote-unquote economic injury, and to show that that injury was the result of the false advertising. What they're saying here is that they didn't have full access to this game for a two-week period. That's their complaint. That's not a refund, and what they're looking for is to be compensated for that two-week time period. All right, thank you very much. If I may just conclude very quickly. There was, and I don't know that this necessarily needs to be said, there was another motion that the plaintiffs put before you to add, excuse me, to ask you to take judicial notice of a whole series of documents, and we submit that that was both improperly filed and it wasn't in accordance with your rules. But beyond that, it's not clear what these documents are intended to do. At least from my perspective, they appear largely irrelevant. These are, in fact, hearsay. They appear to be offered for the truth of the matter asserted therein. Can you tell me what the documents are? The documents are essentially a series of press coverage about the – Oh, press coverage. Okay. Well, I don't see that that's relevant to what we have to decide with respect to whether the complaint states a claim. We agree. Great. Thank you, counsel. Thank you very much. You had some time left, Mr. Lawrence. I was hoping you would say we have a vote. Okay. I don't think so. All right. McMahon and Bankston v. Take-Two Interactive Software is submitted.
judges: Wardlaw, Hurwitz, Rice